## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JANE DOE NO. 2, and JANE DOE NO. 3,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.   21-CV-240-TCK-SH** |
| | ) | |
| **OOLOGAH-TALALA INDEPENDENT SCHOOL** | ) | |
| **DISTRICT NO. 4 OF ROGERS COUNTY,** | ) | |
| **OKLAHOMA a/k/a OOLOGAH-TALALA** | ) | |
| **PUBLIC SCHOOLS; MAX TANNER, individually,** | ) | |
| **and in his capacity as SUPERINTENDENT OF** | ) | |
| **OOLOGAH-TALALA PUBLIC SCHOOLS;** | ) | |
| **DAWN MARTINEZ, individually, and in her** | ) | |
| **capacity as COUNSELOR AT** | ) | |
| **OOLOGAH-TALALA HIGH SCHOOL;** | ) | |
| **BRADY DeSPAIN, individually, and in his** | ) | |
| **capacity as ATHLETIC DIRECTOR and** | ) | |
| **TITLE IX COORDINATOR OF OOLOGAH-** | ) | |
| **TALALA PUBLIC SCHOOLS; TONY** | ) | |
| **SAPPINGTON, individually, and in his capacity** | ) | |
| **as ASSISTANT SUPERINTENDENT OF** | ) | |
| **OOLOGAH-TALALA PUBLIC SCHOOLS;** | ) | |
| **KEVIN HOGUE, individually, and in his capacity** | ) | |
| **as PRINCIPAL OF OOLOGAH-TALALA** | ) | |
| **HIGH SCHOOL; TRENT WINTERS, individually,** | ) | |
| **and in his capacity as COACH at OOLOGAH-** | ) | |
| **TALALA PUBLIC SCHOOLS; and DeWILTON** | ) | |
| **RHODEN, individually, and in his capacity as** | ) | |
| **SCHOOL RESOURCE OFFICER at OOLOGAH-** | ) | |
| **TALALA PUBLIC SCHOOLS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION and ORDER

Before the Court is the Partial Motion to Dismiss filed pursuant to Federal Rule of Civil

Procedure 12(b)(6) by the defendants, Max Tanner, individually, and in his capacity as

Superintendent of Oologah-Talala Independent School District No. 4 of Rogers County, Oklahoma

a/k/a Oologah-Talala Public Schools ("Tanner"); Dawn Martinez, individually and in her capacity

as counselor at Oologah-Talala Independent School District No. 4 of Rogers County, Oklahoma

a/k/a Oologah-Talala Public Schools ("Martinez"); Brady DeSpain, individually and in his

capacity as athletic director at Oologah-Talala Independent School District No. 4 of Rogers County, Oklahoma a/k/a Oologah-Talala Public Schools ("DeSpain"); Tony Sappington, individually and in his capacity as assistant superintendent of Oologah-Talala Independent School District No. 4 of Rogers County, Oklahoma a/k/a Oologah-Talala Public Schools ("Sappington"); and Kevin Hogue, individually and in his capacity as principal of Oologah-Talala Independent School District No. 4 of Rogers County, Oklahoma a/k/a Oologah-Talala Public Schools, ("Hogue") (collectively referred to as "the individual defendants"). (Doc. 26). Plaintiff Jane Doe 2 filed a Response (Doc. 33), and the individual defendants filed a Reply. (Doc. 38).

According to Plaintiffs' Second Amended Complaint, Defendant Trent Winters ("Winters") engaged in "sexual misconduct" in relation to Plaintiff Jane Doe No. 2 and Plaintiff Jane Doe No. 3. Plaintiffs allege the School District and the Individual Defendants engaged in certain wrongful conduct in relation to the issues involving Winters and have brought various legal theories related to that alleged wrongful conduct. *Id.*   Plaintiffs have sued the Individual Defendants in both their individual capacities and their official capacities as employees of the School District. The Individual Defendants contend several of Plaintiffs' claims in the Second Amended Complaint should be dismissed.

Plaintiffs have brought several federal claims against the Individual Defendants in their official capacities. The official capacity claims that the Plaintiffs allege against the Individual Defendants are 42 U.S.C. § 1983 ("Section 1983") claims for violations of the Equal Protection and Substantive Due Process Clauses (Second Am. Compl., ¶¶ 114-134), and a Section 1983 claim under a danger creation theory (Second Am. Compl., ¶¶ 135-145).   The Individual Defendants contend these federal claims against them in their official capacities should be dismissed because

these claims are duplicative of the claims asserted against the School District.

Plaintiff Jane Doe No. 2 has brought a claim against Tanner, Sappington, DeSpain, and Hogue for negligent hiring, training, and supervision. Second Am. Compl., ¶¶ 160-169. Pursuant to the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151 et seq. (the "GTCA"), the state or political subdivision is exclusively liable for all torts committed by its employees while they are acting within the scope of their employment. A review of the Plaintiffs' Second Amended Complaint indicates that this claim is premised on Tanner, Sappington, DeSpain, and Hogue's performance of administrative duties and/or functions within the School District—namely the hiring and supervision of Winters and the training of their employees related to sexual misconduct. Second Am. Compl., ¶¶ 160-169.   The Individual Defendants argue the GTCA requires that these claims be asserted only against the School District. Thus, the negligent hiring, training, and supervision claim against the Individual Defendants should be dismissed.

### I. MOTION TO DISMISS STANDARD

A Complaint must contain "a short and plain statement of the claim, showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Complaint must contain enough "factual matters, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citations omitted). The trial court must insist the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded

claims is insufficient; the complaint must give the court reason to believe [the] plaintiff has a reasonable likelihood of mustering factual support for [the] claims." *Id.* at 1247.

"The nature and specificity of the allegations required to state a plausible claim will vary based on the context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). A plaintiff is not entitled to file a bare bones complaint and fill in the necessary facts after discovery is complete. *London v. Beaty*, 612 Fed. Appx. 910, 916 (10th Cir. 2015). The trial court must insist that the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins*, 519 F.3d at 1249.

In ruling on a motion to dismiss, the court must always accept the plaintiff's well-pleaded facts as true and construe them in the light most favorable to the plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008); *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014). Under this standard, a complaint may not be dismissed on the grounds that the court thinks it unlikely that the allegations can be proven. *Twombly*, 127 S.Ct. at 1974; *Spradlin v. City of Owasso*, 2014 WL 1664974 *2 (N.D.Okla.) (holding that "a well-pleaded complaint may proceed even if actual proof of those facts seems improbable, and that a recovery is very remote and unlikely"). Indeed, "it is well established that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief." *Issa v. Comp USA*, 354 F.3d 1174, 1177-78 (10th Cir. 2003); citing *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

## II. BACKGROUND

Pursuant to the standard set forth *supra*, accepting the plaintiff's well-pleaded facts as true and construing them in the light most favorable to plaintiff, the following facts are alleged in

Plaintiffs' Second Amended Complaint:

1. This is an action for violation of various civil rights codified in the federal statutes, along with claims arising under state law against the Defendants in their individual capacities, and as employees and agents of Independent School District No. 4 of Rogers County, Oklahoma a/k/a Oologah-Talala Public Schools ("OTPS") arising out of a pervasive and repeated pattern of sexual harassment, inappropriate touching of a minor by OTPS staff and inappropriate sexual and lewd comments against Plaintiffs.

2. Jane Doe No. 2 is a female and was a minor at all relevant times alleged in this Second Amended Complaint, and she was required to attend school per 70 O.S. § 10-105. She attended high school at OTPS. Jane Doe No. 2 has now reached the age of majority, is an adult and is entitled to bring this action in her own name.

3. Jane Doe No. 3 is a female and was a minor at all relevant times alleged in this Second Amended Complaint, and she was required to attend school per 70 O.S. § 10-105. She attended high school at OTPS. Jane Doe No. 3 has now reached the age of majority, is an adult and is entitled to bring this action in her own name.

4. At all material times, Jane Doe No. 2 and Jane Doe No. 3 were residents of Rogers County, Oklahoma.

5. OTPS is a public educational institution located in Rogers County, Oklahoma, and is formally titled Independent School District No. 4 of Rogers County, Oklahoma. It is a school district organized under the laws of the State of Oklahoma, with its principal office in Rogers County, Oklahoma.

6. OTPS receives federal funding and is subject to Title IX of the Education Amendments

of 1972, 20 U.S.C. § 1681-1688.

7. Max Tanner is a natural person who at all times relevant was the Superintendent of the Oologah-Talala Public Schools located in Rogers County, Oklahoma. At all relevant times, Max Tanner is believed to have been a resident of Rogers County, Oklahoma.

8. Tony Sappington is a natural person and the Assistant Superintendent employed at OTPS. At all relevant times, Tony Sappington was a resident of Rogers County, Oklahoma.

9. Dawn Martinez is a natural person and was at all relevant times employed by OTPS as a Counselor at Oologah-Talala High School. Upon information and belief, at all relevant times, she was a resident of Rogers County, Oklahoma.

10. Brady DeSpain is a natural person and was at all relevant times employed by OTPS as the Athletic Director and the Title IX Coordinator at OTPS. Upon information and belief, at all relevant times, he was a resident of Rogers County, Oklahoma.

11. Kevin Hogue is a natural person and was at all relevant times employed by OTPS as the Principal at Oologah-Talala High School. Upon information and belief, at all relevant times, Kevin Hogue was a resident of Rogers County, Oklahoma.

12. Trent Winters is a natural person and at all times relevant was employed by OTPS as a teacher and as an Assistant Basketball Coach at Oologah-Talala Public Schools.

13. At all relevant times, DeWilton Rhoden was the School Resource Officer at OTPS. As School Resource Officer, OTPS provided DeWilton Rhoden with office space on the OTPS campus, paid $19,500.00 of DeWilton's Rhoden's annual salary in ten (10) monthly installments and OTPS contracted that DeWilton Rhoden could not be hired or fired without the approval of OTPS.

14. Venue is proper in this district as the Defendants do business in this district, the events giving rise to these claims took place in this district, and the Defendants reside in this district.

15. Jane Doe No. 2 has complied with the Oklahoma Governmental Tort Claims Act and that her claims have been denied as Defendants took no formal action upon the Tort Claim Notice(s). Jane Doe No. 3 is not making state law tort claims in this suit.

16. The Defendants are required by law to provide a safe learning environment for its students, including Jane Doe No. 2 and Jane Doe No. 3. They failed to do so.

17. The Defendants failed to provide OTPS students with an environment free of sexual predators and free of inappropriate touching, sexual comments and sexual harassment.[1] During the fiscal years 2018-2019 and 2019-2020, students at OTPS were preyed upon by OTPS employee, Trent Winters, even after OTPS was on actual notice of a pervasive culture of sexual abuse, inappropriate touching, sexual comments and sexual harassment. Trent Winters has been indicted for these actions related to multiple OTPS students, including Jane Doe No. 2 and Jane Doe No. 3.

18. OTPS hired Trent Winters after he previously left a teaching/coaching job at Braggs Public Schools where allegations of inappropriate conduct, including messages of a sexual nature, were raised. Trent Winters was cited by police for this conduct, and upon information and belief, admitted this conduct to his employer, the Braggs Board of Education, and apologized for the

---

1. Indeed, another teacher and the Defendant in the Jane Doe No. 1 Action "Daniel Bodine", while on the Oologah-Talala school grounds and during school hours, preyed on a female victim known as Jane Doe No. 1. A criminal matter is likewise pending against Bodine. Moreover, former OTPS teacher, Katie Wilmott, faces rape in the second degree charges related to an OTPS student. Two other OTPS teachers, Haylie Smart and Chase Kine, have had their teaching certificates suspended for inappropriate relations with students. This just since 2016.

same. This information was available to OTPS at the time of his hiring.

19. Unfortunately, for the students at OTPS, this was not the first time OTPS hired a coach with previous allegations of sexual misconduct which were public record before his hiring with OTPS.

20. OTPS's decision to hire staff with a known history of misconduct placed students at a heightened risk of being vulnerable to sexual misconduct. This was a heightened risk of which OTPS students were unaware. This risk was known, by OTPS, when Trent Winters was hired since he already made inappropriate and sexual comments to students, and there were rumors about his involvement with students. OTPS knew this would adversely affect the students, including Jane Doe No. 2 and 3.

21. Well prior to November 4, 2019, OTPS and its staff were on actual notice from the Oklahoma State Board of Education that Defendants were not complying with Title IX of the Education Amendments of 1972 with regard to OTPS students.

22. Defendants' indifference to the safety and well-being of its students has caused sexual misconduct to flourish at OTPS. This toxic culture, which has drawn the attention and censure of the Oklahoma State Board of Education, continues to thrive to this day.

23. On October 24, 2019, a mere eleven (11) days before November 4, 2019, the date of new reported allegations raised by OTPS parents and students against Trent Winters, OTPS and its staff members were called before the Oklahoma State Board of Education to discuss the Defendants' lack of compliance with Title IX of the Education Amendments of 1972.

24. At the October 24, 2019 meeting with OTPS, the Defendants assured the Oklahoma State Board of Education, an administrative body, that OTPS would take future complaints by

students and/or parents of a sexual nature seriously and that Defendants would comply with Title IX of the Education Amendments of 1972. Defendants did not do so.

25. As early as November, 2018, more than one (1) year prior to the reports involving Jane Doe No. 2 and Jane Doe No. 3, OTPS was on actual notice from a parent regarding Trent Winters making inappropriate and lewd statements to students and being referred to by students as "Coach Perv," as the same was reported by the parent directly to OTPS middle school principal, Kelly Dixon. OTPS did not properly investigate these allegations, and Ms. Dixon did not report these parent concerns to law enforcement, to the Oklahoma Department of Human Services, or to the Oklahoma State Board of Education.

26. From the 2018-2019 fiscal year, until the resignation of Trent Winters on December 13, 2019, Jane Doe No. 2 and Jane Doe No. 3 were the victims of ongoing sexual harassment, lewd comments and sexual misconduct by predator, Trent Winters. After their report of the same inappropriate behavior on November 4, 2019, and continuing throughout the end of basketball season in the winter of 2020, Jane Doe No. 2 and Jane Doe No. 3 were the victims of retaliation by OTPS and its staff.

27. Trent Winters, acting in the course and scope of his employment, was a teacher for OTPS in 2018-2019 and 2019-2020 fiscal years. During these fiscal years, he served as a teacher at the Oologah-Talala Middle School and as an assistant coach to the OTPS High School girls basketball team.

28. In fiscal years 2018-2019 and 2019-2020, Jane Doe No. 2 and Jane Doe No. 3 were students playing on the OTPS high school girls basketball team.

29. Trent Winters made inappropriate sexual and/or lewd comments and inappropriately

touched the body and/or private parts of Jane Doe No. 2, while on the OTPS high school campus, during school sponsored activities and/or during school hours.

30. Trent Winters made inappropriate sexual and/or lewd comments and sexually harassed Jane Doe No. 3, while on the OTPS high school campus, during school sponsored activities and/or during school hours.

31. Trent Winters inappropriate comments and sexual conduct began during the 2018-2019 fiscal year and continued until he was eventually removed from coaching and later resigned his teaching position at OTPS during the 2019-2020 fiscal year.

32. The inappropriate touching, sexual harassment, and sexually inappropriate and lewd comments by Coach Trent Winters were observed and overhead by multiple OTPS students and the OTPS Assistant Basketball Coach, Amy Jahn, during school activities and/or during school hours. Moreover, they were conducted at a time when OTPS Basketball Coach Doug Winters, was present and had direct oversight over his son and subordinate, Trent Winters.

33. Amy Jahn failed to report the inappropriate touching and inappropriate sexual comments to school district administrators as they occurred. She never reported the same to the Department of Human Services, to the police, to the Oklahoma State Department of Education, nor to the parents of Jane Doe No. 2 or Jane Doe No. 3. This is despite Amy Jahn's concern that Defendants were "teaching" the Plaintiffs "how to be in an abusive relationship."

34. On November 4, 2019, during school hours, multiple students, including Jane Doe No. 2, advised OTPS High School Counselor, Dawn Martinez, about the inappropriate touching of Jane Doe No. 2, ongoing sexual harassment and sexually inappropriate comments made to and about students, including Jane Doe No.2 and Jane Doe No. 3, involving Assistant Basketball Coach

10

Trent Winters. This reporting included information that Jane Doe No. 3 was the victim of sexual harassment and/or sexual or lewd comments by Trent Winters about her buttocks and wanting "to get with" Jane Doe No. 3. This sexual misconduct by Trent Winters was substantiated by OTPS employee, Amy Jahn.

35. On November 4, 2019, OTPS Athletic Director and Title IX Coordinator, Brady DeSpain, received a complaint of misconduct by Trent Winters by another OTPS Parent. Later that evening, he received another report of sexual misconduct and lewd comments by Trent Winters from the parent of Jane Doe No. 2. Brady DeSpain did not report these allegations to law enforcement, the Department of Human Services or the Oklahoma State Board of Education. Moreover, Brady DeSpain did not undertake to investigate these allegations.

36. During the thirty-six (36) days that followed the first report by Jane Doe No. 2 and other OTPS students, including a report about the sexual harassment of Jane Doe No. 3, OTPS Counselor, Dawn Martinez, did not inform the Department of Human Services or the police of the allegations regarding the inappropriate touching and/or the sexually inappropriate lewd comments. She further did not notify the Oklahoma State Board of Education.

37. At no time did OTPS Counselor, Dawn Martinez, report the allegations of inappropriate touching, ongoing sexual harassment and sexually inappropriate lewd comments to the parents of Jane Doe No. 2. This violates the Oklahoma Parents Bill of Rights, 25 O.S. § 2001, et seq.

38. During the thirty-six (36) days that followed the first report, which contained information about lewd comments, sexual harassment and the misconduct by Trent Winters related to Jane Doe No. 3, Dawn Martinez did not seek to talk to Jane Doe No. 3 nor to investigate these allegations pertaining to Jane Doe No. 3. Dawn Martinez also failed to contact the parent(s) of

11

Jane Doe No. 3 about the allegations related to Jane Doe No. 3. This violates the Oklahoma Parents Bill of Rights, 25 O.S. § 2001, et seq.

39. On or about November 4, 2019, Dawn Martinez advised OTPS Principal Kevin Hogue and OTPS Superintendent Max Tanner that she had received allegations of ongoing sexual harassment, lewd comments, and/or sexual misconduct against Trent Winters. Neither Max Tanner nor Kevin Hogue reported to the parents of Jane Doe No. 2 or Jane Doe No. 3, to law enforcement, the Oklahoma Department of Human Services, or the Oklahoma State Board of Education upon receiving this report.

40. On November 4, 2019, members of the OTPS Board of Education, OTPS Superintendent Max Tanner, and OTPS Athletic Director and Title IX Coordinator Brady DeSpain, were made aware of the allegations of sexual harassment, inappropriate touching and sexually inappropriate comments made by Assistant Basketball Coach Trent Winters to students, including Jane Doe No. 2 and Jane Doe No. 3. OTPS staff were made aware that one of the individuals reporting the sexually inappropriate behavior by Assistant Basketball Coach Trent Winters, was the daughter of OTPS Athletic Director Brady DeSpain, and another was the child of OTPS Middle School Principal Kelly Dixon.

41. Upon information and belief, parents of multiple OTPS students reported inappropriate touching, ongoing sexual harassment, and/or sexually inappropriate comments regarding Trent Winters to OTPS personnel, including but not limited to Principal Kevin Hogue, Middle School Principal Kelly Dixon, OTPS Assistant Superintendent Tony Sappington, OTPS Athletic Director and Title IX Coordinator Brady DeSpain, and Board of Education President Don Tice.

42. During the thirty-six (36) days that followed the initial November 4, 2019 reports of

the inappropriate comments, ongoing sexual harassment, and inappropriate touching by Trent Winters, Defendants failed to report the allegations of sexual misconduct and lewd comments by Trent Winters to a law enforcement agency, to the Department of Human Services and/or to the parents of Jane Doe No. 2 and Jane Doe No. 3.

43. Between November 4, 2019 and December 9, 2019, the Defendants did not seek a statement from Jane Doe No. 2 on her allegations. Moreover, at no point on or after November 4, 2019, did any of the Defendants seek a statement from Jane Doe No. 3, nor did they attempt to investigate the allegations of ongoing sexual harassment and lewd comments directed to and about Jane Doe No. 3.

44. DeWilton Rhoden abrogated his responsibilities as a law enforcement officer and/or school resource officer. He wholly failed to conduct any investigation or to file any report with a police department regarding the allegations of students at OTPS about Trent Winters. DeWilton Rhoden failed to interview any of the complainants or their parents, and perhaps most importantly, he failed to interview Trent Winters. Moreover, he failed to interview the OTPS staff whose complaints were made to by parents and/or students.

45. Part of the legal responsibilities of teachers, resource officers, and/or administrators of OTPS are to receive reports of sexual misconduct and lewd comments suffered by students, especially when that misconduct occurs on school property, during school hours, and/or during school sponsored activities.

46. Instead of OTPS staff immediately reporting, as required by 1OA O.S. § 1-6-102 and 10A § 1-2-202(B)(2), Defendants took no action. In fact, after the November 4, 2019 report by Jane Doe No. 2 and other students to Dawn Martinez, Ms. Martinez sent Jane Doe No. 2 and other

students who had made complaints of a sexual nature regarding Trent Winters to basketball practice where they would be in the presence of and under the guidance and control of their reported abuser, Trent Winters. Dawn Martinez further took no action to ensure the safety of Jane Doe No. 3 regarding the allegations pertaining to her, allowing her to attend basketball practice with her alleged abuser, Trent Winters. This is tantamount to retaliation.

47. On the morning of November 5, 2019, the parents of Jane Doe No. 2, had an in-person meeting with OTPS Superintendent, Max Tanner, and OTPS Assistant Superintendent, Tony Sappington, to discuss the inappropriate touching and ongoing sexually inappropriate comments made by Assistant Basketball Coach, Trent Winters, and to request a full and complete investigation. During this meeting, the parents of Jane Doe No. 2 advised these administrators that they believed Trent Winters was a sexual predator. Neither Max Tanner nor Tony Sappington reported this information to the Department of Human Services as required by law.

48. Despite this being a Title IX issue, OTPS failed to invite its Title IX Coordinator, Brady DeSpain, to attend this meeting, nor did the Title IX Coordinator follow up with Jane Doe No. 2 or her family after this meeting. These failures violate Title IX of the Education Amendments of 1972.

49. Jane Doe No. 3 and her parents were never given the opportunity to speak with Defendants about the allegations pertaining to her, despite those allegations having been brought to the Defendants' attention by OTPS students and OTPS staff member Amy Jahn on November 4-5, 2019.

50. After the report, the allegations of inappropriate sexual touching of a minor, ongoing sexually lewd and inappropriate comments, and sexual harassment involving Assistant Basketball

Coach Trent Winters were confirmed by OTPS staff members, including Amy Jahn, to OTPS Superintendent Max Tanner and Assistant Superintendent Tony Sappington. Inexplicably, for at least thirty-five (35) days after these allegations were substantiated by Ms. Jahn, OTPS staff and administrators purportedly failed to interview any of the students who raised allegations of sexual misconduct by Trent Winters and failed to further investigate the allegations that other students, like Jane Doe No. 3, were the victims of ongoing abuse, sexual harassment, and lewd comments by Trent Winters.

51. The OTPS staff member who confirmed the allegations of inappropriate touching and ongoing sexually inappropriate comments and harassment by Assistant Basketball Coach, Trent Winters, had not previously reported the same to OTPS administrators, law enforcement nor to the Oklahoma Department of Human Services as required by Oklahoma statute.

52. Assistant Basketball Coach, Trent Winters, was not immediately removed from his teaching and/or coaching position(s) at OTPS while the allegations of students were being investigated. In fact, Trent Winters was never relieved of his teaching duties by OTPS administrators. Instead, his voluntary resignation was accepted in January, 2020.

53. Because of Defendants lack of response to the allegations, Trent Winters was allowed to remain on OTPS property and to remain in charge of students for weeks following the reports by multiple students and parents of his sexual misconduct.

54. Jane Doe No. 2 and her parents and Jane Doe No. 3 and her parents were not kept informed of the investigation into the sexual misconduct of Trent Winters, as required by Title IX of the Education Amendments of 1972. Instead, OTPS Assistant Superintendent Tony Sappington improperly advised Jane Doe No. 2's family he could not give any information on the

investigation, and the OTPS Title IX Coordinator Brady DeSpain provided no information to Jane Doe No. 2 or her family, nor to Jane Doe No. 3 or her family.

55. On November 14, 2019, Jane Doe No. 2's father and OTPS Board of Education President, Don Tice, conducted a telephone meeting regarding the inappropriate sexual touching, lewd comments and sexual harassment claims involving Assistant Basketball Coach, Trent Winters. During this telephone conference, the parent made OTPS School Board President, Don Tice, aware of the fact that neither the OTPS Superintendent nor OTPS Assistant Superintendent had provided any update or acknowledgement of any investigation of the pending allegations. At that point in time, OTPS School Board President, Don Tice, was made aware that none of the students who had reported the inappropriate touching, ongoing sexually inappropriate comments and ongoing sexual harassment to OTPS Counselor, Dawn Martinez, had been questioned or asked to give a written statement by any other staff member or administrator at OTPS. Additionally, OTPS School Board President, Don Tice, was made aware by the parent that the OTPS Athletic Director and Title IX Coordinator, Brady DeSpain, had advised the family they just needed to focus on basketball, rather than the pending allegations.

56. On November 27, 2019, having received no investigation or action by OTPS to stop or curtail the misconduct, the parents of Jane Doe No. 2 contacted Oklahoma State Board of Education's office to notify it of the allegations of sexual misconduct pending against a teacher and coach at OTPS.

57. On November 20, 2019, the Oklahoma State Department of Education, Elizabeth Suddath, advised Jane Doe No. 2's parents that the Oklahoma State Department of Education would begin investigating a Title IX offense involving OTPS Assistant Basketball Coach Trent

16

Winters.

58. OTPS, its staff, administrators and board members have allowed a pervasive culture of sexual abuse and sexual harassment of its students by OTPS staff and coaches. Since 2016, at least five (5) staff members have resigned, been fired or had criminal charges brought for sexual misconduct related to OTPS students.

59. Defendants have created a pervasive culture of not promptly reporting sexual misconduct to law enforcement and the Department of Human Services and this is evidenced by the multiple instances of sexual misconduct.

60. It was not until December 9, 2019, and only after pressure was executed by the Oklahoma State Board of Education office, that OTPS staff began to investigate the allegations of ongoing sexual misconduct involving Assistant Basketball Coach Trent Winters.

61. As of December 9, 2019, no action had been taken by OTPS staff or the OTPS Board of Education to remove Assistant Basketball Coach, Trent Winters, from his teaching duties at OTPS despite knowledge of the incidents of inappropriate touching, sexually charged comments, and ongoing sexual harassment being directly witnessed and overheard by school officials.

62. On November 18-19, 2019, OTPS Superintendent, Max Tanner, advised the Oklahoma State Board of Education that the sexual misconduct allegations against Trent Winters were a "he said/she said scenario," despite the fact that Max Tanner and OTPS administrators were aware these statements had been substantiated by OTPS staff member, Amy Jahn.

63. On December 9, 2019, OTPS Athletic Director and Title IX Coordinator, Brady DeSpain, advised that the students who made sexual misconduct allegations against Trent Winters, including his own daughter, "were just being dramatic."

64. It is clear the sexual misconduct allegations from multiple students, pertaining Jane Doe No. 2 and Jane Doe No. 3, among others, were not taken seriously by OTPS staff and administrators.

65. Due to the Defendants' affirmative actions, Jane Doe 1 and 2 were placed in direct harm.

66. On December 9, 2019, Jane Doe No. 2's father emailed OTPS High School Principal, Kevin Hogue, and advised him regarding the sexual misconduct directed to Jane Doe No. 2 by Trent Winters. The father further advised OTPS Principal Kevin Hogue that it was apparent the school was failing to act in an appropriate and lawful manner by failing to report, and failing to immediately investigate the allegations. Moreover, the father advised OTPS Principal Kevin Hogue that the school was only now investigating the incident after the father himself had contacted the Oklahoma State Department of Education and had it begin the Title IX investigation into the actions of OTPS and its staff.

67. On December 9, 2019, only after being contacted by the Oklahoma State Department of Education, did Defendants elect to get any written statements from OTPS students about the allegations. Despite being on actual notice of the sexual harassment of and lewd comments by Trent Winters related to Jane Doe No. 3, Defendants opted not to get a statement from her. Defendants persevered in their refusal to speak with and/or get a statement from Jane Doe No. 3, even after the written statement of Dawn Martinez, Amy Jahn and at least one student's written statement reflected the sexual harassment of Jane Doe No. 3.

68. As a result of the sexual misconduct of Trent Winters, Jane Doe No. 2 and/or Jane Doe No. 3 have suffered from low self-esteem, depression, an eating disorder, physical sickness and

other psychological and emotional issues. Additionally, they were retaliated against by OTPS staff, including Doug Winters, the father of Trent Winters, as Jane Doe No. 2's playing time was substantially decreased, and both Jane Doe No. 2 and Jane Doe No. 3 were thereafter subjected to Doug Winters' harsh temper and harassing questions about the allegations.

69. As a result of its investigation into these allegations, the Oklahoma State Board of Education has suspended the teaching certificate of Trent Winters.

70. The Defendants failed to properly execute and/or enforce policies in regard to the reporting of sexual misconduct to state agencies to protect students from abuse and to end the access of students to suspected predators. The inadequacy of Defendants' enforcement and handling of these policies resulted in the deprivation of Plaintiff's statutory, constitutional and common law rights.

71. The Defendants were acting as temporary guardians of Jane Doe No. 1 and No. 2 while on the OTPS campus.

72. OTPS failed to ensure that all of their employees, teachers, school resource officer, and administrators were properly hired, trained, retained, and supervised to perform their jobs and legal responsibilities.

73. As a result of repeated violations of Title IX of the Education Amendments of 1972 by OTPS and its staff members, the Oklahoma State Board of Education publicly censured OTPS and Max Tanner on July 21, 2020, for their "roles in contributing to a school culture in which student complaints were treated dismissively… It is because of these failures to act promptly and appropriately to protect students, and the ongoing failure to implement corrective measures with Fidelity, that your District now holds a probationary accreditation status." See Exhibit 5.

74. In its correspondence to OTPS and Max Tanner dated July 21, 2020, the Oklahoma State Board of Education, an administrative body, determined that OTPS and its staff "have failed both your duties and your students" on Title IX issues.

75. The Oklahoma State Board of Education, an administrative body, has determined that OTPS and its staff "have displayed a shocking disregard for students' voiced concerns, no doubt contributing to an environment that discourages students from coming forward for help."

### III. ANALYSIS

**A. Federal Law Claims Asserted Against the Individual Defendants in Their Official Capacities**

In their Partial Motion to Dismiss, the Individual Defendants argue that the federal claims against them in their official capacities should be dismissed because they are duplicative of the federal claims against the Defendant Independent School District No. 4 of Rogers County, Oklahoma a/k/a Oologah-Talala Public Schools. In their Response, the Plaintiffs "concede that generally suing the Individual Defendants in their official capacities, which make up the entity that is also named can be duplicative." The Plaintiffs, however, assert there is a recognized "exception" when punitive damages are alleged.

There is no applicable exception in the instant case that would allow punitive damages against the Individual Defendants in their official capacities. The Individual Defendants are correct that punitive damages are not recoverable against municipal entities under § 1983. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1307 (10th Cir. 2003). Bringing suit against a public official in his or her official capacity is the same as bringing suit against the entity he or she represents. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, to the extent the Plaintiffs are seeking punitive damages against the named school

officials in their individual capacities, such damages are recoverable. *Alden v. Maine*, 527 U.S. 706, 756 (1999); *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1121 (10th Cir. 2004).

Accordingly, the federal law claims against the Individual Defendants in their official capacities are dismissed.

### B. Plaintiff Jane Doe No. 2's State Law Tort Claims for Negligent Hiring, Training, Supervision, and Retention

The second argument advanced by the Individual Defendants in their Partial Motion to Dismiss is that the state law tort claims for negligent hiring, training, supervision, and retention against Tanner, Sappington, DeSpain, and Hogue by Plaintiff Jane Doe No. 2 should be dismissed. The Individual Defendants argue that this claim should be dismissed because the allegations concern conduct that occurred while Tanner, Sappington, DeSpain, and Hogue were acting within the scope of their employment, and under the GTCA, such claims must be alleged against the School District only.

The GTCA provides "the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort" under Oklahoma law. *Tuffy's Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009); *see, e.g.*, Okla. Stat. tit. 51, § 153 (B). The GTCA generally immunizes individual state employees from liability for torts committed "within the scope of their employment." Okla. Stat. tit. 51, § 152.1(A); *see Id.* § 163(C); *Crouch v. Daley*, 581 F. App'x 701, 705 (10th Cir. 2014) (holding that state employee acting within scope of employment is immune from tort liability under GTCA and "responsibility for any loss incurred as a result of that employee's torts shifts to the political subdivision"). In their Partial Motion to Dismiss, the Individual Defendants argue that because any duties owed to Plaintiff existed only due to their employment responsibilities, Plaintiff's claims are such "scope of employment" claims barred by

the GTCA. *See* Defs.' Partial Mot. to Dismiss at 8-9 (citing *Copper v. Millwood Indep. Sch. Dist. No. 37*, 887 P.2d 1370, 1374-75 (Okla. Civ. App. 1994)).

Under the GTCA, however, the term "scope of employment" is defined as "performance by an employee *acting in good faith* within the duties of the employee's office, or employment, or of tasks lawfully assigned by a competent authority." Okla. Stat. tit. 51, § 152(12) (emphasis added). Thus, "[a]n act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith." *Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003). The factual allegations presented by Plaintiff—particularly in regard to the allegations concerning the hiring of Winters (Second Am. Compl., ¶¶ 161-162, 168-169), the investigation of the alleged "sexually inappropriate behavior" by Winters (Second Am. Compl., ¶ 163), the failure to report the allegations related to Winters (Second Am. Compl., ¶¶ 164-165), the failure to adequately train and supervise School District staff and employees (Second Am. Compl., ¶¶ 165-167, 169), and the negligent retention of Winters after learning of his misconduct (Second Amended Complaint, §§ 52-53, 56-72) —"raise an inference of bad faith sufficient to withstand dismissal pursuant to the [GTCA]." *Romero v. City of Miami*, 8 F.Supp. 3d 1321, 1333 (N.D. Okla. 2014); *Gowens v. Barstow*, 364 P.3d 644, 652 (Okla. 2015) (rejecting the proposition that "malice or bad faith can never be inferred from conduct exhibiting reckless disregard for the rights of others"); *Shepard v. CompSource Okla.*, 209 P.3d 288, 293 (Okla. Civ. App. 2009) ("[A]cts contrary to the interests of the employer are not within the scope of employment.").

Moreover, courts have repeatedly noted that "while [the scope-of-employment] issue may be adjudicated upon consideration of a summary judgment motion, it cannot properly be determined in a motion to dismiss." *Pendegraft v. Bd. of Regents of Okla. Colls.*, 2019 WL

22

3806639, at *6 (Okla. Aug. 13, 2019) (internal quotation marks omitted); *accord Melton v. Okla. ex rel. Univ. of Okla.*, 532 F.Supp. 3d 1080, 1092 (Okla. 2021). "Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact." *Tuffy's Inc.*, 212, P.3d at 1163; *see Nail v. City of Henryetta*, 911 P.2d 914, 918 (Okla. 1996). As explained above, Plaintiff has alleged facts plausibly showing that Defendants were not acting in good faith as to the conduct alleged to be tortious. Because "different conclusions could be drawn as to whether [Defendants] acted in good faith," their request for dismissal based on GTCA immunity is denied. *Melton*, 532 F. Supp. 3d at 1092.

### IV. CONCLUSION

The federal law claims asserted against the Individual Defendants in their official capacities are dismissed. However, punitive damages may be recovered, if appropriate, against the Individual Defendants in their individual capacities.   Further, because "different conclusions can be drawn as to whether the Individual Defendants acted in good faith," their request for dismissal based on GTCA immunity is denied.

Accordingly, the Individual Defendants Partial Motion to Dismiss (Doc. 26) is granted in part, and denied in part.

**IT IS SO ORDERED**, this 2nd day of December, 2022.

TERENCE C. KERN
United States District Judge